IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA

VERSUS                                    CRIMINAL NO. 5:06cr14-DCB-JCS

DUSTIN RONALD FORD                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Dustin Ronald Ford's Motion to Suppress [**docket entry no. 17**]. An evidentiary hearing was held on October 3, 2006 in Jackson, Mississippi. Having reviewed the motion, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

### PROCEDURAL HISTORY

On April 5, 2006, Dustin Ronald Ford was arrested by Officer Grady Smith in Wharton, Texas for attempting to pass a forged check. The next day, Ford was taken to Officer Smith's office for questioning. It is undisputed that the defendant was read his Miranda rights. Likewise, it is undisputed that the defendant expressly waived these rights before questioning began. Ford claims, however, that he invoked his Miranda right to counsel during this questioning. Ford further asserts that Officer Smith ignored this request and continued the questioning without providing him counsel. In his Motion to Suppress [**docket entry no. 17**], Ford moves that all statements made after his request for

counsel should be suppressed. The government argues, on the other hand, that (1) the defendant did not unequivocally invoke his right to counsel, or (2) if the defendant did properly invoke his right to counsel, the subsequent statements were voluntarily made and thus admissible. To resolve these disputes, an evidentiary hearing was held on October 3, 2006 in Jackson, Mississippi.

The indictment currently pending against the defendant concerns an alleged car-jacking that occurred on the Natchez Trace Parkway in Mississippi. When Ford was arrested, the keys to the car were found in his pocket. During the questioning by Officer Smith, Ford made inculpatory statements about how he obtained the car. These statements are the subject of the defendant's motion to suppress.

## FACTS[1]

### THE ORAL STATEMENTS BY FORD

At 1:42 p.m. on April 6, 2006, after receiving a knowing and voluntary Miranda waiver, Officer Smith began questioning Ford. Officer Smith began the questioning by asking Ford to chronologically describe the events that led to his arrest in Wharton, Texas. Ford's story began in Canton, Mississippi where he

---

[1] In an evidentiary hearing, the Court sits as a finder of fact and must resolve all disputed issues. U.S. v. Willis, 525 F.2d 657, 659 (5th Cir. 1976); see Fed. R. Evid. 104 cmt. (1972) ("To the extent that [admissibility] inquiries are factual, the judge acts as a trier of fact."). Inherent in this duty to resolve disputed questions of fact, the Court is required to determine the credibility of witnesses. Id.

broke into his father's house to steal checks and guns. Ford stated that he was under the influence of drugs, and that he was planning on driving to Mexico where he hoped to overdose and die. To further this goal, Ford borrowed a friend's car without the owner's permission and began his journey to Mexico. Ford then explained to Officer Smith that while he was on the Natchez Trace, his friend's car broke down. At this point in the questioning, the following exchange occurred,

> Question by Officer Smith: "How did you get the car we found you in?"
>
> Answer by Ford: "I would rather have a lawyer to talk about that."

Officer Smith testified that he responded, "OK." Then, Ford took a deep breath and said, "Let's just say that I ended up with the car I was arrested in. I got it from a white lady and a white man from England."[2] Officer Smith then asked Ford to continue with his chronological description of events.

Ford claims that after he requested counsel, Officer Smith prompted him by asking, "What happened next?" The defendant then responded, "I got it from a white lady and a white man from England."[3] Officer Smith then continued on with the questioning.

---

[2] Adrian Trennery and Trudy Munn, the victims of the alleged Natchez Trace car-jacking, are both from England.

[3] Ford claimed in the evidentiary hearing that he did not make the statement, "Let's just say I ended up with the car I was arrested in."

*THE WRITTEN STATEMENT*

After approximately 30-45 minutes of questioning, Ford was given a cigarette break. At 2:51 p.m., Officer Smith and Ford reconvened so that Officer Smith could type a written statement for Ford to sign. At no point before or during this process was Ford re-Mirandaized or informed of his right to counsel. The process of typing the statement proceeded as such: First, Officer Smith would type a sentence based on his recollection of the prior questioning; then, he would read the sentence to Ford and ask, "Is that right?" Ford would then take the opportunity to expound on his previous oral statements or to correct Officer Smith's sentence. Occasionally after asking, "Is that right?," Officer Smith would also ask, "Then what happened?" During one of these exchanges, the defendant explained how he replaced the license plate on the allegedly stolen car with his friend's license plate.[4]

After Officer Smith finished typing the statement, he printed it out and allowed Ford to read it. Ford read the document in approximately five minutes, then he signed it. This document was titled "Voluntary Written Statement," and it contained a <u>Miranda</u> waiver at the top. Ford initialed this waiver. This entire

---

[4]The car was a rental car registered in South Carolina and rented to the English couple. When the car was found, the South Carolina license plate had been removed and replaced with the license plate from Ford's friend's car.

process concluded at 4:16 p.m.

## ANALYSIS

I. **Defendant Ford Unambiguously and Unequivocally Invoked his Right to Counsel**

In <u>Davis v. United States</u>, 512 U.S. 452 (1994), the Supreme Court held that police questioning must cease only where the defendant clearly and unequivocally invoked his right to counsel. Thus, the police were not obligated to stop questioning Ford if his statement was "ambiguous or equivocal [such] that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." <u>Davis</u>, 512 U.S. at 459. Rather than viewing a defendant's statement in isolation, the Court may consider the circumstances immediately surrounding the alleged invocation. <u>Abela v. Martin</u>, 380 F.3d 915, 926 (6th Cir. 2004) (finding that Defendant's statement, "Maybe I should talk to an attorney by the name of William Evans," along with providing police with Evans's business card was an unambiguous invocation).

Exactly what constitutes a clear and unequivocal invocation of a defendant's <u>Miranda</u> right to counsel is an issue that has deeply divided the courts. A litany of cases could be cited covering all sides of the gamut. Indeed, several cases have provided such a list, <u>see</u> <u>Soffar v. Cockrell</u>, 300 F.3d 588, 594 n.5 (5th Cir. 2002). For this case, such an exercise is unnecessary.

In response to police questioning concerning how he obtained

the car, Ford stated, "I would rather have a lawyer to talk about that." Similarly, in United States v. Espinal-Cardona, 635 F. Supp. 330 (D.N.J. 1986), the district court found that the defendant clearly and unequivocally invoked her Miranda right to counsel where she said that she would "rather have an attorney before answering any . . . questions." Espinal-Cardona, 635 F. Supp. at 333. See also State v. Munson, 594 N.W.2d 128 (Minn. 1999) (defendant's statement, "I think I'd rather talk to a lawyer," was a sufficiently clear invocation of his right to counsel). Ford's request for counsel was in response to a direct question about the allegedly stolen car. When viewed in light of the surrounding circumstances, Ford's statement can only be interpreted in one way: He wanted a lawyer. A defendant cannot be expected to possess the oratorical skills of a seasoned litigator; rather, a simple, clear statement requesting counsel is all that is required to invoke one's right to counsel. Accordingly, the Court finds that Ford clearly and unequivocally invoked his right to counsel.

## II. The Effect of Ford's Post-Invocation Statements

In Edwards v. Arizona, the Supreme Court established the bright-line prophylactic rule that once a defendant invokes his right to counsel, all police interrogation must cease unless conducted in the presence of counsel. 451 U.S. 477 (1981). Then, in Arizona v. Roberson, the Court declared the Edwards rule to be

non-offense specific; therefore, when the right to counsel is invoked, all police interrogation must cease, even if such interrogation is unrelated to the charge pending against the defendant. 486 U.S. 657, 681-83 (1988). Edwards created an exception, however, for situations where the defendant himself initiated communication with the police.

Even after a defendant has invoked his right to counsel, **all** statements made voluntarily after the invocation are fully admissible. Poyner v. Murray, 964 F.2d 1404, 1412 (4th Cir. 1992); see U.S. v. Lee, 2006 WL 1977437, at *1 (5th Cir. July 17, 2006) (slip opinion) (citing U.S. v. Gonzalez, 121 F.3d 928, 940 n.7 (5th Cir. 1997)). That being so, the mere fact that a defendant makes a single spontaneous statement does not necessarily mean that the police may interrogate the defendant without counsel being present. To determine if police questioning is proper after a defendant has invoked his right to counsel, the Court must engage in two separate inquiries: (1) whether the defendant's spontaneous statement falls within Edward's reinitiation exception, and (2) whether the defendant knowingly and intelligently waived the right he had previously invoked. Smith v. Illinois, 469 U.S. 91, 95 (1984). To fall within the reinitiation exception, the statement must "represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation." Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983).

If the defendant did voluntarily reinitiate communication with the police, the prosecution has the burden of showing that the defendant waived his Miranda right to counsel for the subsequent questioning. Smith, 469 U.S. at 95.

A. Ford's initial statement

Conflicting testimony, see supra, was presented concerning whether Ford's initial post-invocation statement was spontaneous or the result of further questioning. The defendant offered no evidence indicating that Officer Smith is untrustworthy; rather, Ford merely testified that his inculpatory statement was made in response to a question. The prosecution has shown, however, that Ford has a recent history of committing crimes related to dishonesty, such as forgery. After careful consideration, the Court finds Officer Smith's account of the facts more credible. As such, Ford's initial post-invocation spontaneous statement should not be suppressed.

B. Officer Smith's post-invocation questioning and the written statement

The admissibility of Ford's written statement, which contained his post-invocation responses to Officer Smith's questioning, however, is a more difficult question. Directly at issue here is the application of Edward's reinitiation exception as interpreted by Smith and Bradshaw. Specifically, the Court is concerned with

whether Smith's two-part test[5] was met, and if so, at what point. While Bradshaw's requirement that the defendant's spontaneous statement be intended to "open up a more generalized discussion" is apparently met, the Court reserves judgment on the issue of whether (or when) Ford again waived his right to counsel. The Court is aware, though, of case law holding that a defendant may waive his right to counsel "by initiating the conversation and then responding to renewed questioning . . . ." Poyner v. Murray, 964 F.2d 1404, 1413 (4th Cir. 1992). Counsel for both sides should be prepared for argument concerning Smith's two-part test on the morning that trial begins.

## CONCLUSION

Although Ford clearly and unequivocally invoked his right to counsel, his post-invocation spontaneous statement is admissible at trial. The Court reserves ruling on whether the post-invocation responses to questioning by Officer Smith and the written statement may be admitted at trial. Accordingly,

IT IS HEREBY ORDERED that the defendant's Motion to Suppress [**docket entry no. 17**] is **DENIED**.

IT IS FURTHER ORDERED that counsel be prepared to argue whether the post-invocation responses to questioning and the

---

[5] As previously mentioned, the two-part test requires the Court to decide, (1) whether the defendant's spontaneous statement falls within Edward's reinitiation exception, and (2) whether the defendant knowingly and intelligently waived the right he had previously invoked. Smith v. Illinois, 469 U.S. 91, 95 (1984).

written statement should be admitted into evidence.

SO ORDERED this, the 10th day of October, 2006.

_____
UNITED STATES DISTRICT JUDGE